Second degree murder; sentence: ten years imprisonment.
In the late afternoon hours of March 30, 1979, Dewey Goins was shot by the appellant while supposedly on a picnic at Spring Creek in Tuscumbia. The appellant was arrested and originally charged with assault with intent to murder. However, upon Goins' death ten days later, he was charged with first degree murder. His trial resulted in a conviction of second degree murder.
The fatal shooting was witnessed by Faye Goins, the deceased's wife, and Calvin Franks, a friend of the appellant. Both testified at the trial; however, at the beginning of the trial, Franks was too drunk to testify and was confined to jail by the trial judge as the only means of having him sober enough to testify the next day. While the testimony of Faye Goins and Calvin Franks is in conflict on some points, both are nevertheless in agreement that the appellant shot the deceased.
Appellant's defense was that he and Calvin Franks came upon Mr. and Mrs. Goins near Spring Creek. They thought Mr. Goins was mistreating Mrs. Goins in some manner. Franks thought Mr. Goins was giving Mrs. Goins some type injection although he did not see a syringe and could not tell exactly what Goins was doing. Neither did the appellant see a syringe, nor could he observe what the deceased was doing to Mrs. Goins. Both testified that *Page 80 
when they approached the couple, the deceased began cursing and threatening them so they left. The appellant got a shotgun, and he and Franks returned to see what Goins was doing to the woman. Goins again cursed and threatened them and came toward the appellant who then fired the fatal shot.
It appears that all four of the persons at the scene were either drunk or had been heavily drinking prior to the shooting. The eyewitness testimony is in conflict as to whether the appellant threatened to kill Goins before leaving the scene and returning with a shotgun. Likewise, the testimony is in conflict as to whether the unarmed Goins cursed the appellant and rushed toward him when the appellant returned to the scene with a shotgun. Goins' wife said her husband merely stood up when the appellant approached them and was shot without saying a word. In any event, the evidence is clear that the appellant shot and killed an unarmed man. We therefore find it unnecessary to recite further details as no serious issue exists involving the facts.
During the course of Mrs. Goins' testimony, she admitted having alcohol problems and being treated for such. However, she denied having drug abuse problems. She stated that her husband had not given her an injection at the scene of the shooting. Defense counsel then thoroughly cross-examined her on the subject of her alleged drug abuse. In that cross-examination counsel used numerous medical records from the Eliza Coffee Memorial Hospital (hereinafter ECM) showing seventeen hospital admissions for alcohol and/or drug abuse on the part of the witness covering a period from 1962 through April 13, 1979. Each of those hospital records was admitted into evidence on behalf of the defense.
The appellant's only issue raised on appeal concerns itself with the correctness of the trial court's ruling denying his motion to compel Riverbend Center for Mental Health (hereinafter Riverbend) to disclose records concerning the treatment of Dewey and Faye Goins for alcohol and/or drug abuse. Appellant asserts that the denial of his motion unduly limited his ability to cross-examine Mrs. Goins in that he could not effectively impeach her by contradicting her testimony concerning drug abuse. Thus, he contends the jury was prevented from fully assessing her credibility as a witness.
 I
A threshold issue which must be resolved is whether the appellant met the federal procedural guidelines requisite to disclosure of the Riverbend records.
Under 21 U.S.C. § 1175 (a) and 42 U.S.C. § 4582 (a), records of the identity, diagnosis, prognosis, or treatment of any patient which are maintained in connection with the performance of any drug abuse prevention function or any program or activity relating to alcoholism or alcohol abuse education, training, treatment, rehabilitation, or research which is conducted, regulated, or directly or indirectly assisted by any department or agency of the United States shall be confidential and shall be disclosed only for the purposes and under the circumstances authorized under the above sections. Subsection (b)(2)(C) of each section, supra, states that such records may be disclosed without the written consent of the patient:
 "If authorized by an appropriate order of a court of competent jurisdiction granted after application showing good cause therefor. In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services. Upon the granting of such order, the court, in determining the extent to which any disclosure of all or any part of any record is necessary, shall impose appropriate safeguards against unauthorized disclosure."
Subsection (g) of each section, supra, provides for the promulgation of rules and regulations to carry out the purposes of the section. 42 C.F.R. § 2.64 lists the requisite procedures and criteria governing § 1175 and 4582. The relevant procedures and criteria require: *Page 81 
(1) The use of a fictitious identity of the patient in the application for a court order to compel disclosure.
(2) Notice to the patient whose records are requested to be disclosed.
(3) An in camera hearing, unless otherwise requested by the patient, held to determine whether an order should issue compelling disclosure.
(4) A showing of good cause by the party seeking disclosure. In assessing such the trial court is required to weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and the treatment services.
(5) The need for disclosure due to the absence of alternate sources of information or the lack of other competent evidence.
(6) A showing of lack of adverse effect upon successful treatment or rehabilitation of the patient or effectiveness of the program or other similarly situated programs by disclosure.
A review of the record indicates that the appellant met the first, second, and third enumerated criteria of the federal regulations. As to the fourth criterion, the appellant contends he made a showling of good cause in that he could not effectively cross-examine the witness and impeach her testimony without use of such records. We disagree.
The trial court allowed defense counsel to thoroughly cross-examine Mrs. Goins on the subject of her drug abuse. She was examined at length and in detail about her prior admissions to the ECM Hospital and as to her use of drugs on each such occasion. The question of Mrs. Goins'credibility, or lack thereof, was clearly put before the jury on that issue. Any further testimony or extrinsic evidence on that subject would have been cumulative, repetitious and somewhat akin to "beating a dead horse." Consequently, the appellant did not sufficiently establish an overriding necessity or disclosure of the Riverbend records in face of the strong policy of Congress against disclosure pursuant to criteria (4) and (5), supra.
Likewise, there was no showing by the appellant of a lack of an adverse effect upon Mrs. Goins or on the Riverbend treatment programs if disclosure of her records was allowed. Consequently, the appellant failed to meet the requirement of criterion (6), supra.
While there is a paucity of cases in this area, see generally: United States v. Graham, 548 F.2d 1302 (8th Cir. 1977); United States v. Banks, 520 F.2d 627 (7th cir. 1975); and United States v. Hopper, 440 F. Supp. 1208 (N.D.Ill. 1977).
 II
This court does not view lightly any limitation on the right of cross-examination because that right is granted by both constitution and statute. United States Constitution, amend. 6; Article I, § 6, Constitution of Ala. 1901; § 12-21-137, Code of Ala. 1975; Ball v. State, Ala, Cr.App., 337 So.2d 31, cert. Quashed, Ala., 337 So.2d 39 (1976). Nevertheless, certain limitations on cross-examination are permissible.
 "The trial court has the discretion reasonably to limit the range of cross-examination in respect to collateral and irrelevant mattes or with respect to matters that unnecessarily consume time in the trial of the case. It has been said, in regard to the trial court's rights to limit cross-examination, that a trial is not meant to be an eternal phenomenon." (Footnotes omitted). Gamble, McElroy's Alabama Evidence, § 136.01 (3d ed. 1977)
The control of cross-examination is within the discretion of the trial judge after a party has had an opportunity to substantially exercise his right of cross-examination. Dixon v.United States 333 F.2d 348 (5th cir. 1964). However, the trial judge may reasonably limit the range of cross-examination on matters that are repetitious, argumentative, collateral,irrelevant, harassing, annoying, or humiliating. Atwell v.State, Ala.Cr.App., 354 So.2d 30, 39 (1977), cert. denied, Ala., 354 So.2d 39 (1977). The right to a thorough and sifting *Page 82 
cross-examination does not entitle a party to repeat questions that have already been answered. Proctor v. State, Ala.Cr.App.,331 So.2d 828 (1976).
In the instant case, Calvin Franks stated that it appeared to him that Mr. Goins was giving Mrs. Goins some type of an injection although he could not actually see what he was doing. Mrs. Goins denied receiving an injection. From that, defense counsel sought to show that Mrs. Goins had a record of drug abuse; that, presumably for the purpose of showing that she may have been receiving an injection of some narcotic drug from her husband just prior to the confrontation that led to the shooting.
The entire testimony of Franks on this issue is merely his speculation as to what Goins was doing. He saw no syringe and actually saw no injection take place. If he had seen an injection, it would again only be speculation on his part that a narcotic drug was being administered as opposed to a prescribed drug such as insulin. Therefore, by showing a multitude of hospital records relating to Mrs. Goins' drug abuse, the appellant would only show her disposition or propensity toward the use of drugs generally. That evidence would not have proved that what Franks thought he saw was what he indeed saw.[1]
The Riverbend records would not prove that Mrs. Goins was taking drugs on the date of the crime thereby impeaching her denial of that assumption by Franks. The only purpose for the Riverbend records was to show that Mrs. Goins was likely to have been under the influence of drugs or alcohol at the time of the shooting and was probably not a credible witness to the crime.
The Riverbend records were not solely necessary for that purpose as the ECM records showed her disposition toward alcohol and/or drug abuse, and in addition she admitted her alcoholic condition and that she had been drinking the night before the shooting. The trial judge, therefore, did not abuse his discretion in refusing to admit the Riverbend records for purposes of further cross-examination on a subject that had been already covered in detail and which was likewise of questionable relevancy to the issue being tried.
AFFIRMED.
All the Judges concur.
[1] As to immaterial matter affecting the general credit of a witness as opposed to the credibility of the witness in a particular case, see Clauncy Lumber Co. v. Howell, 260 Ala. 243, 70 So.2d 239 (1954), and Noble v. State, 253 Ala. 519,45 So.2d 857 (1950). *Page 630